■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MICHAEL ARRIAGA, Respondent. [611 NYS2d 183] —Order, Supreme Court, New York County (Edward J. McLaughlin, J.), entered September 9, 1992, which granted defendant's motion to suppress evidence seized from his person, unanimously reversed, on the law, the motion to suppress is denied, and the indictment is reinstated.

The defendant and another, Oswaldo Peterson, were charged with criminal possession of a forged instrument in the second degree and criminal possession of stolen property in the fourth degree. After a hearing on a motion to suppress, the court found as follows: At around 5:30 A.M. on July 5, 1991, two Amtrak police officers observed Peterson in Penn Station inserting a credit card twice into an Amtrak ticket vending machine which returned the card to him; the defendant was next to him looking around the terminal (the court found that while looking around he was actually "looking out"). At least one of the officers was aware that there existed a problem with illegally obtaining tickets at this machine with stolen credit cards.

When the defendant saw the officers approaching, in an overly nonchalant way he asked them what time it was, although there was a large clock visible to him on the wall, and he was wearing a watch. The officers answered and approached, asked Peterson if he was having trouble with his credit card, and he replied that he was. Peterson was asked a few more questions, including whether it was his card, to which he responded that it was, and the defendant confirmed that. One of the officers then took the card from him and told Peterson to sign his name in the officer's memo book, which

Peterson did twice, signing the name of the rightful cardholder. The signatures plainly did not match the one on the credit card. The officers asked if the two minded if they called Citibank, the card issuer, and without objection they all proceeded to a nearby phone. The phone conversation confirmed that Peterson was not the rightful cardholder. The defendant and Peterson were arrested. Further evidence, incriminating to them both, was obtained subsequent to arrest, including six Amtrak tickets purchased with the stolen credit card, which were recovered from the defendant's pocket.

The Hearing Judge denied Peterson's motion to suppress, finding there was probable cause to arrest, but granted the defendant's motion to suppress, finding that the predicate level of suspicion insofar as the defendant was concerned did not rise to the level of probable cause to arrest, and that the evidence obtained as a result of this unauthorized arrest was tainted. The People appeal that order. We reverse.

Once it was clear to the police officers that Peterson was knowingly in possession of and had attempted to use a stolen credit card, the defendant's conduct in apparently acting as lookout, coupled with his attempt to distract the officers' attention and reassure them that the card properly belonged to his accomplice, was sufficient to give rise to probable cause. "Probable cause requires, not proof beyond a reasonable doubt or evidence sufficient to warrant a conviction * * * but merely information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed" *(People v McRay,* 51 NY2d 594, 602). We conclude that the circumstances herein gave the officers probable cause to believe that defendant and Peterson were accomplices in possession of the stolen credit card, and that the defendant's arrest was therefore lawful. Accordingly, we reverse the order of suppression and reinstate the indictment. Concur—Sullivan, J. P., Carro, Wallach, Kupferman and Ross, JJ.